# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 1989AP1848-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against<br>Daniel W. Linehan, Attorney at Law:<br><br>Board of Attorneys Professional Responsibility n/k/a<br>Office of Lawyer Regulation,<br>       Complainant,<br>    v.<br>Daniel W. Linehan,<br>       Respondent. |

DISCIPLINARY PROCEEDNGS AGAINST LINEHAN

| | |
|---|---|
| OPINION FILED: | July 15, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, J., concurs. (Opinion Filed.) |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   1989AP1848-D

STATE OF WISCONSIN            :       IN SUPREME COURT

**In the Matter of Disciplinary Proceedings
Against Daniel W. Linehan, Attorney at Law:**

**Board of Attorneys Professional Responsibility
n/k/a Office of Lawyer Regulation,**

      **Complainant,**

  **v.**

**Daniel W. Linehan,**

      **Respondent.**

**FILED**

**JUL 15, 2015**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY reinstatement proceeding. *Reinstatement granted upon conditions.*

¶1   PER CURIAM.  We review a report filed by Referee James G. Curtis, recommending that the court reinstate, with conditions, Daniel W. Linehan's license to practice law in Wisconsin.  After careful review of the matter, we agree that Attorney Linehan's license should be reinstated and that conditions should be placed upon his practice of law.  We also conclude that Attorney Linehan should be required to pay the

full costs of this reinstatement proceeding, which are $15,714.12 as of April 14, 2015.

¶2 Attorney Linehan was admitted to practice law in Wisconsin in 1977 and practiced in Madison. In 1989, this court granted Attorney Linehan's petition for license revocation by consent and revoked his license to practice law in Wisconsin effective November 1, 1989. See In re Disciplinary Proceedings Against Linehan, 151 Wis. 2d 797, 446 N.W.2d 450 (1989).

¶3 Attorney Linehan's petition for voluntary revocation of his license to practice law stated that he was the subject of an investigation of possible misconduct with respect to his representation of a client "and is also the subject of an investigation involving possible misconduct and medical incapacity due to chronic substance abuse." Attorney Linehan acknowledged that he could not successfully defend against the allegations of misconduct. As additional background, he stated that he had been afflicted with a longstanding, chronic sickness or disease involving several forms of substance abuse, which sickness or disease was a factor which contributed to the conduct resulting in the misconduct allegations that were the subject of investigations by the Board of Attorneys Professional Responsibility (BAPR), the predecessor in interest to the Office of Lawyer Regulation (OLR). The petition for voluntary revocation stated that, despite both inpatient and outpatient treatment, Attorney Linehan continued to be afflicted by chronic and significant problems involving substance abuse. Attorney Linehan stated that he believed he was unable to obtain the

2

long-term treatment needed to effectively recover from his medical condition and still practice law at the same time. He stated that his desire to voluntarily surrender his license to practice law was based in part upon his belief that he had a medical incapacity, and that he desired to obtain further treatment for that condition.

¶4 The two-page published order revoking Attorney Linehan's license to practice law by consent stated that Attorney Linehan was a subject of investigation by BAPR

> in connection with his use of client trust funds for his own personal purposes, deposit of personal loan proceeds into his client trust account, failure to promptly pay settlement proceeds to a client and fully account to the client for those proceeds he had deposited in his trust account, failure to maintain records pertaining to his trust account and record the purpose of disbursements from that account and his chronic substance abuse.

Linehan, 151 Wis. 2d at 798.

¶5 Attorney Linehan filed petitions for the reinstatement of his license to practice law in 1996 and 1998, both of which were withdrawn. His most recent reinstatement petition was filed on February 18, 2014. Referee Curtis was appointed on April 8, 2014. The referee held an evidentiary hearing in January of 2015 and issued his report and recommendation on March 25, 2015.

¶6 The referee said that, as a result of the evidence presented at the hearing and the numerous exhibits received by stipulation, it was clear that "[t]his is, first and foremost, a medical incapacity case." The referee said there was no doubt

3

that a medical incapacity in the form of chronic substance abuse directly caused Attorney Linehan's trust account misconduct. The referee said that, because this case was submitted to the court in 1989 as a consensual revocation, the court was presented with limited information about the substance abuse allegations.

¶7 The referee noted that an attorney seeking reinstatement after a disciplinary suspension or revocation must demonstrate by clear, satisfactory, and convincing evidence that he or she has the moral character necessary to practice law in this state, that his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest, and that the attorney has complied fully with the terms of the suspension or revocation order and the requirements of Supreme Court Rule (SCR) 22.26. In addition, SCR 22.31(1)(c) incorporates the statements that a petition for reinstatement must contain pursuant to SCR 22.29(4)(a)-(4m). Among other things, an attorney seeking the reinstatement of his license has the burden to prove that his conduct since revocation has been "exemplary and above reproach." SCR 22.29(4). The referee noted that Attorney Linehan freely admitted that his conduct during the entire period of revocation has not been exemplary and above reproach, given that he continued to suffer from alcohol and substance abuse issues through at least 2009. Consequently, the referee said that if this court were to deem Attorney Linehan's reinstatement petition as having been filed under SCR 22.29, the

4

referee would have to conclude that Attorney Linehan failed to meet his burden of proof in a number of respects, most significantly that Attorney Linehan has failed to demonstrate that his conduct since the revocation has been exemplary and above reproach. The referee went on to say, "But even if Mr. Linehan waited another 10 years to seek reinstatement, and exhibited exemplary conduct during that time, he could never prove that his conduct since the 1989 revocation has been exemplary and above reproach. His past misdeeds would always come back to haunt him."

¶8 In the referee's view, Attorney Linehan's revocation by consent should be viewed as a revocation based on a medical incapacity, meaning that reinstatement is governed by SCR 22.36. Under that rule, the petitioner has the burden of showing by clear, satisfactory, and convincing evidence that the medical incapacity has been removed and that the petitioner is fit to resume the practice of law, with or without conditions. The referee noted that, although there was a component of professional misconduct involved in the consensual license revocation, in the referee's opinion, the misconduct itself was not sufficient to warrant an outright revocation and the more significant impetus for the consensual revocation was Attorney Linehan's medical incapacity. The referee said that, in the event this case is viewed as a medical incapacity reinstatement matter, the referee is satisfied that the medical incapacity has been removed and that Attorney Linehan's license to practice law in Wisconsin should be reinstated, with conditions.

¶9    In reaching this conclusion, the referee noted that "[t]his case presents the Jekyll/Hyde paradox in the life and times of Daniel W. Linehan, who has been 'characterized as sane when he is clean and sober and as insane when he is not.'" The referee found that Attorney Linehan has been afflicted with chronic alcohol and substance abuse since approximately age 15. In the 1980s, prior to his consensual license revocation, Attorney Linehan received both inpatient and outpatient treatment but exhibited a tendency for relapses of his chronic substance abuse. The referee found that the chronic substance abuse substantially interfered with Attorney Linehan's ability to conduct his law practice. The referee noted that after the revocation of his law license, Attorney Linehan spent time in the Dane County jail on a drunk driving conviction and his driver license was revoked.

¶10    The referee further noted that in the 1990s, Attorney Linehan worked as a clerk for a law firm in Minnesota and as a paralegal with the Hennepin County Attorney's Office in Minneapolis. The referee found that this employment was not deemed contrary to the Minnesota Rules of Professional Conduct. While Attorney Linehan remained relatively clean and sober between 1992 and 1995, he suffered a relapse in 1995. He was terminated from his job at the Hennepin County Attorney's Office in the spring of 1998 due to substance abuse issues. Attorney Linehan filed petitions for the reinstatement of his Wisconsin law license in 1996 and 1998 but was not honest about the status

of his substance abuse problems and decided to withdraw both petitions.

¶11 In 1998, Attorney Linehan was charged with theft of a motor vehicle and aggravated drunk driving in Minnesota. He was convicted and placed on probation. Around 1998, Attorney Linehan began treating with Dr. Roger Johnson, a psychiatrist. Dr. Johnson remained Attorney Linehan's main mental health treatment provider until the doctor retired in 2010. Dr. Johnson diagnosed Attorney Linehan with major depression and treated him with medication. With the doctor's support, Attorney Linehan applied for Social Security Disability benefits, which were awarded around 1998.

¶12 In December of 1998, Attorney Linehan was arrested for intoxication and being in possession of a stolen automobile. The investigation revealed that he had burglarized his neighbor's residence, stole credit cards and their vehicle, and made charges with the credit cards without proper consent. He was charged with eight criminal counts. Because he was already on probation, he was incarcerated in the Sherburne County jail from December of 1998 until February of 1999. In January of 1999, he was also charged with forgery involving a $3,000 check. Attorney Linehan entered into a plea agreement on the charges in February of 1999 and was convicted and sent to prison. Around June 1, 1999, he was released on an ankle bracelet monitoring program. He suffered a relapse and was arrested and sent back to prison for violating the terms of his release. He was released from custody in July of 2000.

7

¶13 In 2003, Attorney Linehan was convicted of operating after revocation in Wisconsin. In 2002 and 2003, he was sporadically drinking and using drugs. He engaged in sporadic drinking and drug use again between 2006 and 2008. In December of 2009, he was taken into custody for an emergency detention when a friend called police to report that Attorney Linehan was very intoxicated and was making threats to harm himself or others. He was admitted to Mendota Mental Healthcare Center. Following a detention hearing, the court found the least restrictive level of care was on an outpatient basis, although the court expressed concern over threats that had been made. The court ordered daily breathalyzer sampling to ensure that Attorney Linehan remained sober and, if he could not, he would be taken into custody.

¶14 The referee said Attorney Linehan maintains that his recovery began in a serious way after he was discharged from Mendota Mental Healthcare Center, that since that time he has worked hard to overcome his medical incapacity, and that, apart from a two- or three-week lapse in July of 2011 after a friend died, he has maintained sobriety since that time. The referee said:

> Since 2009 Linehan has continued to make important progress in his personal and spiritual growth and character change. He returned to attendance at local [Alcoholics Anonymous (AA)] meetings multiple times per week and obtained significant support from friends in the Black River Falls community.

8

> Linehan's recovery status over the last five years has progressively improved. His viewpoint and attitude have changed so that he is better able to enjoy life. His depression is in a state of remission and he has stopped believing that his life wasn't worth living. He has experienced a growing awareness of happiness and joy, rather than a grudging resistance to recovery.
>
> The referee finds that Linehan's sworn testimony and his presentation at the hearing was credible, forthright and open. He has a very strong desire to return to the practice of law. He describes himself as a clean and sober person and in that state, he believes he is a person who can be relied upon to uphold the standards of the legal profession because they are right and because he's asking permission for reinstatement. . . . . As long as he is clean and sober, Linehan believes that he can be safely recommended to the public, the courts and the legal profession as a person fit to consult on legal matters.

¶15 In November of 2011, Attorney Linehan obtained employment with the Hixton Travel Plaza as a maintenance man and dishwasher. He has worked two shifts per week, approximately 16 hours, and has been a reliable and dependable employee.

¶16 In October of 2012, Attorney Linehan contacted the Wisconsin Lawyers Assistance Program (WisLAP) to inquire about voluntary monitoring of his substance abuse. Attorney Linehan voluntarily disclosed his July 2011 relapse in the course of his WisLAP monitoring and in the course of this reinstatement proceeding. The referee found that if Attorney Linehan had not made this voluntary disclosure, the relapse would never have been known. The referee noted that WisLAP Manager Linda Albert described Attorney Linehan's participation in the program as exemplary. Ms. Albert testified at the reinstatement hearing

that Attorney Linehan has come to grips with his deplorable history and seems ready to make a change. Beginning in late November of 2012, Attorney Linehan has undergone nail drug and alcohol testing every 90 days and all tests have been negative. His participation in the WisLAP program has been voluntary, and he has paid for the testing at the rate of approximately $1,400 per year. The monitoring contract requires attendance at AA meetings at least three times per week. Attorney Linehan has exceeded that standard by attending three to five meetings per week. The monitoring contract requires daily check-ins, and Attorney Linehan has been highly compliant, making 765 daily check-ins out of a possible total of 767. Ms. Albert recommends that Attorney Linehan continue with monitoring whether or not his law license is reinstated, since monitoring will detect any relapse episode and it will be promptly reported to the OLR. Although Attorney Linehan's current monitoring contract ends in October of 2015, it can be continued indefinitely. The referee noted that Attorney Linehan is asking this court to consider indefinite monitoring as a condition of reinstatement.

¶17 The referee said that although Dr. Johnson lost his clinic notes on Attorney Linehan, the doctor wrote a letter in July of 2013 summarizing Attorney Linehan's psychiatric treatment from 1998 until 2010. Dr. Johnson said:

> Based upon my involvement with Dan over the years it is my opinion, to a reasonable degree of medical certainty, that he is not a threat to society, criminally or otherwise if he is clean and sober. This coupled with his gradual improvement of depressive symptoms over the years, also leads me to

10

conclude that he is capable of making an attempt to return to work, particularly in the area of his original training, the law.

¶18 The referee noted that as part of the OLR's investigation of the reinstatement petition, the OLR scheduled an independent psychiatric and addiction evaluation, which was performed by Dr. Matthew Felgus on October 1, 2014. Dr. Felgus concluded that Attorney Linehan's substance abuse disorder was currently in full remission. Dr. Felgus said, "Like all individuals with substance dependence, there is an ongoing chance of relapse that in Mr. Linehan's case would warrant indefinite monitoring should he meet the standard of reinstatement." The referee noted that under SCR 22.36(6), "fitness" encompasses a physically, mentally, and morally sound state and a "state of preparedness to render competent legal services; that is, to be prepared to provide the measure of expertise to ensure the attorney may be safely recommended to the community as a person to be consulted by and to represent others in legal matters." In re Medical Incapacity Proceedings Against Schlieve, 2010 WI 22, ¶24, 323 Wis. 2d 654, 780 N.W.2d 516. Based on this standard, the referee said he is satisfied that Attorney Linehan's medical incapacity has been removed. He said that Attorney Linehan deserves a great deal of credit for the effort made to turn his life around. The referee said:

> A decision by this court to reinstate Mr. Linehan's license will enhance his self-esteem, his confidence, and his overall recovery. Mr. Linehan shows true remorse for his prior bad behavior. A decision granting reinstatement would be a recognition by the court that even after a lengthy period of

11

revocation and bad behavior, an attorney can benefit from the effort necessary to straighten out and fly right.

So long as Mr. Linehan remains clean and sober, the medical incapacity has been removed. But Mr. Linehan's history suggests that a relapse episode, while unlikely, remains a possibility. Therefore, any decision to reinstate Mr. Linehan's license should be strictly conditioned on his continued participation in the WisLAP monitoring program until such time as WisLAP determines that ongoing monitoring is no longer necessary. In the event of a relapse, WisLAP would immediately report to OLR and Mr. Linehan's license could be summarily suspended pending any further investigation.

¶19 The referee said that the "fitness" requirement of SCR 22.36(6) was more troubling, given that Attorney Linehan has not practiced law for over 25 years and that there have been significant changes in the law during that time. In addition, he has not held full-time employment in any capacity since 1998. The referee noted, however, that Attorney Linehan has maintained learning in the law by completing the required continuing legal education (CLE) credits needed for reinstatement. Attorney Linehan has also consulted with an accountant to prepare a system for accounting of his income and expenses should his license to practice law be reinstated. In addition, the referee noted that Attorney Terry Davis acts as Attorney Linehan's monitor through the WisLAP program, and if Attorney Linehan is granted reinstatement, he will be able to call on Attorney Davis on a weekly basis to discuss issues and problems in the practice of law. In the referee's opinion, this ongoing monitoring will provide some assurance that Attorney Linehan is handling matters

within his sphere of competence and is adequately addressing his clients' needs.

¶20 In addition, the referee noted that Attorney Lawrence Hanson, who has honorably practiced law for 54 years and has been very involved with Lawyers Concerned for Lawyers and with WisLAP, got to know Attorney Linehan in the 1980s and has had frequent contacts with him in the last two and one-half years. The referee said that Attorney Hanson knows the perils of chronic substance abuse and, in Attorney Hanson's opinion, Attorney Linehan is absolutely qualified to practice law based on his background and knowledge, so long as he stays away from drugs and alcohol.

¶21 The referee also noted that, if reinstated, Attorney Linehan says he will not look for full-time employment with a law firm but believes there would be a significant amount of small legal business in his community. Prior to 1989, Attorney Linehan had a general practice with over 100 criminal jury trials and 25 or 30 civil trials. The referee said that Attorney Linehan does have substantial legal experience, although it is dated. The referee said that, considering Attorney Linehan's age and circumstances, he would probably practice on a part-time basis, and with the WisLAP monitoring, his practice will be subject to some measure of oversight and control. The referee said:

> In a case involving a lengthy suspension, it is always difficult for a lawyer to affirmatively prove the fitness element. Having witnessed Mr. Linehan's presentation at the hearing and with the benefit of

13

the WisLAP monitoring, Attorney Davis' mentoring, and Attorney Hanson's opinion on qualifications, the referee concludes that Mr. Linehan has met his burden of proving that he is fit to resume the practice of law, with conditions, under SCR 22.36(6).

¶22 The referee noted that during the course of the reinstatement proceedings, the OLR contended that Attorney Linehan failed to acknowledge his obligation to reimburse the Wisconsin Lawyers' Fund for Client Protection (Fund) and failed to fairly characterize that obligation in his petition. The referee noted that the trust account violations mentioned in the 1989 consensual revocation proceeding involved Attorney Linehan's client, S.W. S.W.'s personal injury case was settled for $20,000. Attorney Linehan was entitled to a contingent fee and expenses. At the time, Attorney Linehan was using drugs and alcohol and his practice was out of control. Various checks were written out of the trust account, both to S.W. and to Attorney Linehan. Attorney Linehan maintains that he and S.W. met and agreed to resolve the matter. Attorney Linehan contends that he obtained a loan from his father and paid S.W. the agreed upon balance owed. Because of the hopeless state of his trust accounting and business records, Attorney Linehan has no documentary proof of the agreement or of the final payment to S.W.

¶23 In addition to filing a grievance with the OLR, S.W. submitted a claim to the Fund and ultimately received $4,513.33 from the Fund, in return for which he signed a subrogation agreement. The administrator of the Fund resurrected the file but acknowledged that it may not be complete. The administrator

14

testified that the Fund does not actively seek restitution from attorneys unless this court has ordered restitution.  The court's 1989 revocation order did not mention restitution.

¶24  Attorney Linehan said that he first became aware that the Fund had paid a claim to S.W. in 2005.  At the time he filed his reinstatement petition, although he believed that the Fund had paid S.W., it was his position that he did not need to pay the Fund back since the Fund never notified him and since he believed he had already paid S.W.  Prior to the hearing in this matter, however, Attorney Linehan entered into an agreement to reimburse the Fund at the rate of $75 per month.  The referee said that since Attorney Linehan has made suitable arrangements for installment payments that are acceptable to the Fund, the restitution issue should not stand as an impediment to Attorney Linehan's request for reinstatement.

¶25 In summary, the referee recommends that Attorney Linehan's petition for reinstatement from his medical incapacity be granted, with the following conditions:  a) that he continue participation in the WisLAP monitoring program on an indefinite basis, until such time as WisLAP determines that ongoing monitoring is no longer necessary; b) that he continue with monitoring/mentoring with either Attorney Terry Davis or some other appropriate attorney as determined by WisLAP; c) that he remain fully compliant with the WisLAP monitoring program, with any noncompliance detected by WisLAP to be immediately reported to the OLR which, in turn, may petition this court for a summary and immediate suspension of Attorney Linehan's license to

15

practice law pending any further investigation or proceedings that may be necessary under the circumstances; d) that, within the next 12 months, he successfully complete 15 hours of CLE ethics courses, at least eight of which focus on trust account administration; e) that, upon reinstatement of his license, he consult with an appropriate accountant to develop an effective business and trust accounting system; f) that he cooperate with the OLR's efforts to monitor his business and trust accounting for a period of one year; and g) that he fully comply with the terms of his restitution agreement with the Fund.

¶26 No appeal has been filed, so this court considers this matter pursuant to SCR 22.33(3). A referee's findings of fact will not be overturned unless clearly erroneous. In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. We independently review the referee's legal conclusion, noting that whether the petitioner has demonstrated fitness to resume the practice of law presents a legal question which we review de novo. In re Disciplinary Proceedings Against Chavez, 2012 WI 83, ¶14, 342 Wis. 2d 419, 816 N.W.2d 265.

¶27 We agree with the referee that, although this court's cursory 1989 order revoking Attorney Linehan's license to practice law by consent did not explicitly state that the revocation was due to a medical incapacity, the petition for voluntary revocation clearly identified medical incapacity as the primary driving force behind Attorney Linehan's decision to relinquish his law license. Accordingly, we deem it appropriate

to treat his petition for reinstatement of his license as having been filed under SCR 22.36. We further conclude that the referee's findings support a determination that Attorney Linehan has met his burden under SCR 22.36(6) to establish by clear, convincing, and satisfactory evidence that his medical incapacity is removed and that he is fit to resume the practice of law. We agree that conditions on Attorney Linehan's license to practice law are necessary to ensure that he continues to receive appropriate treatment. Finally, we deem it appropriate to require Attorney Linehan to pay the full costs of this proceeding, $15,714.12.

¶28 IT IS ORDERED that the petition for reinstatement of the license of Daniel W. Linehan to practice law in Wisconsin is granted, effective the date of this order.

¶29 IT IS FURTHER ORDERED that, as conditions of the reinstatement of his license to practice law in Wisconsin, Daniel W. Linehan shall comply with the following mandatory conditions: a) he shall continue participation in the Wisconsin Lawyers Assistance Program monitoring program on an indefinite basis, until such time as the program determines that ongoing monitoring is no longer necessary; b) he shall continue with monitoring/mentoring with either Attorney Terry Davis or some other appropriate attorney as determined by the Wisconsin Lawyers Assistance Program; c) he shall remain fully compliant with the Wisconsin Lawyers Assistance Program monitoring program, with any noncompliance detected by the program to be immediately reported to the Office of Lawyer Regulation which,

17

in turn, may petition this court for a summary and immediate suspension of Attorney Linehan's license to practice law pending any further investigation or proceedings that may be necessary under the circumstances; d) within the next 12 months, he shall successfully complete 15 hours of continuing legal education ethics courses, at least eight of which focus on trust account administration; e) upon reinstatement of his license, he shall consult with an appropriate accountant to develop an effective business and trust accounting system; f) he shall cooperate with the Office of Lawyer Regulation's efforts to monitor his business and trust accounting for a period of one year; and g) he shall fully comply with the terms of his restitution agreement with the Wisconsin Lawyers' Fund for Client Protection.

¶30  IT IS FURTHER ORDERED that within 120 days of the date of this order, Daniel W. Linehan shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶31  IT IS FURTHER ORDERED that compliance with all of the terms of this order remain a condition of Daniel W. Linehan's license to practice law in Wisconsin.

¶32 SHIRLEY S. ABRAHAMSON, J. *(concurring).* I agree with the majority that Attorney Linehan's license to practice law should be reinstated and that numerous conditions should be imposed to ensure that he continues to receive appropriate treatment and monitoring. I part company with the majority as to condition c. Rather than authorizing the OLR to petition this court for a summary and immediate suspension of Attorney Linehan's license to practice law in the event it receives notice of noncompliance from WisLAP, I would direct the OLR to seek the issuance of an order to show cause why the attorney's license should not be summarily suspended.