**2015 WI 80**2015 WI 80

# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 1997AP3862-D & 1996AP3390-D |
| COMPLETE TITLE: | In the Matter of Medical Incapacity Proceedings Against Nancy A. Schlieve, Attorney at Law. |
| | Board of Attorneys Professional Responsibility , n/k/a Office of Lawyer Regulation, |
| | Complainant-Appellant-Respondent-Respondent, |
| | v. |
| | Nancy A. Schlieve, |
| | Respondent-Respondent-Petitioner-Appellant. |

MEDICAL INCAPACITY PROCEEDINGS AGAINST SCHLIEVE

| | |
|---|---|
| OPINION FILED: | July 15, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 9, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ABRAHAMSON, J., dissents. (Opinion Filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-respondent-petitioner-appellant, there were briefs by *Nancy Schlieve*, Eau Claire, and oral argument by *Nancy Schlieve*.

For the complainant-appellant-respondent-respondent, there was a brief by *Wayne A. Arnold*, Rice Lake, and oral argument by *Wayne A. Arnold*.

notice

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

Nos.   1997AP3862-D
       1996AP3390-D

STATE OF WISCONSIN                          :          IN SUPREME COURT

In the Matter of Medical Incapacity Proceedings
Against Nancy A. Schlieve, Attorney at Law.

Board of Attorneys Professional Responsibility,
n/k/a Office of Lawyer Regulation,

          Complainant-Appellant-Respondent-
          Respondent,

     v.

Nancy A. Schlieve,

          Respondent-Respondent-Petitioner-
          Appellant.

FILED

**JUL 15, 2015**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY reinstatement proceeding.   *Reinstatement denied.*

¶1   PER CURIAM.   Nancy A. Schlieve has appealed from a referee's report recommending the denial of Attorney Schlieve's petition for reinstatement of her license to practice law in Wisconsin.   Attorney Schlieve argues that the medical incapacity which resulted in the suspension of her law license has been removed and that she is fit to resume the practice of law.

¶2  After careful consideration of the matter and after hearing oral argument, we conclude that Attorney Schlieve has failed to meet her burden under Supreme Court Rule (SCR) 22.36(6) to show by clear, satisfactory, and convincing evidence that she is currently fit to resume the practice of law.  Accordingly, we deny her reinstatement petition.  We also find it appropriate to impose the full amount of costs of this reinstatement proceeding, which are $20,367.49 as of January 29, 2015.

¶3  Attorney Schlieve was licensed to practice law in Wisconsin in 1990.  In 1997, this court imposed conditions on her license directed toward her rehabilitation from alcoholism.  See In re Medical Incapacity Proceeding Against Schlieve, Case No. 96-3390-D, 212 Wis. 2d 693, 569 N.W.2d 593 (Table) (1997).  In 1998, this court suspended Attorney Schlieve's license due to her medical incapacity of alcoholism.  The suspension was imposed for an indefinite time.  See In re Medical Incapacity Proceedings Against Schlieve, 221 Wis. 2d 610, 585 N.W.2d 585 (1998).

¶4  In 2006, Attorney Schlieve filed a petition seeking the reinstatement of her license to practice law.  This court denied reinstatement on the grounds that Attorney Schlieve had failed to meet her burden of proving "fitness" as required by SCR 22.36(6).  See In re Medical Incapacity Proceedings Against Schlieve, 2010 WI 22, 323 Wis. 2d 654, 780 N.W.2d 516.

2

¶5    Attorney    Schlieve    filed    a    second    petition    for reinstatement on September 10, 2012.   James G. Curtis, Jr. was appointed as referee on December 18, 2012.   A hearing was held over  the  course  of  two  days,  with  testimony  completed  on March 13, 2014.

¶6   One of the witnesses who testified at the hearing was Linda Albert,  who  manages  the  Wisconsin  Lawyers  Assistance Program  (WisLAP)  which  provides  the  systems  and  monitoring  for attorneys.   Ms.  Albert  testified  that  Attorney  Schlieve  had contacted  WisLAP  in  the  spring  of  2013  inquiring  about monitoring  since  she  was  applying  for  reinstatement  of  her license to practice law.   Ms. Albert explained:

> Nancy came into the program and, unlike the majority
> of  monitoring  participants,  has  exhibited  behaviors
> that  have  required  a  lot  of  clarification  of  what  is
> to be done within monitoring.
>
> . . . .
>
> So  a  difficult  time  following  directions  of  the
> program,  you  know,  having  directions  to  make  sure  and
> report  all  prescription  medication  to  us,  and  then
> discovering  that  she  hasn't  done  that  and  having  to
> ask for that.   You know, she has wanted to dictate the
> terms  of  her  testing,  you  know,  when  testing  will  be
> and  how  it  will  be  done  and  why  we  would  need  to  do
> hair testing.
>
> . . . .
>
> She  had  a  positive  screen  for  a  mood-altering
> substance  in  her  September  of  2013  screen.   And  I
> asked  her  about  it,  and  her  answer  was  very  vague  and
> something  about,  you  know,  having  gotten  medications
> from  different  countries  when  she  was  traveling  and
> she didn't know if that could cause it.

3

And so we have to take a lot of time trying to verify very objective data. And so, for example, with the positive screen, we even went to her doctor and asked for a list of prescribed mediations. And when that came back, it did not include any medication -- any prescription for something with codeine in it for September of 2013; yet she had a positive screen for codeine. So it's been these types of things that have become particularly time-consuming and difficult with not following the directions and the questioning and not agreeing with.

. . . .

So, in essence, what I have said to Nancy is -- you know, sent her a letter to state, you know, we can follow her through her hearing today, but that she's no longer appropriate to be in the monitoring program.

* * * *

It's been a case of difficulty of getting information, problems following directions, causing problems at the collection site, not giving access to medical providers when the contract requires it. So I don't anticipate that those things would change because we've tried hard to work with them and to redirect and to ask for what we need. . . . .

We don't have the staff time. And I don't think that it's probably in the best interest to, you know, try to continue to work with that behavior versus just not have the relationship for either party. . . . .

* * * *

I would say that 99% of the people that have come into monitoring are able to follow the instructions and understand them and do things according to sequence and provide the information requested.

And it's a pretty rare case when someone is not able to do that.

¶7 Testimony was also received at the hearing from persons in the Eau Claire city attorney's office. Eau Claire City Attorney Stephen Nick testified that in his opinion

4

Attorney Schlieve had been dishonest, abused the legal system, lacked the ability to navigate the city and court procedures, and engaged in a pattern of intentional delay and avoidance with respect to various city citations issued against her relating to rental property. Assistant City Attorney Stephen Bohrer testified about the numerous problems he had encountered with Attorney Schlieve on various citation matters. He said she would send undated faxes with no return fax or phone number. Mr. Bohrer concluded that Attorney Schlieve was manipulating the dates on the faxes for purposes of causing delay or causing cases to become more complicated than they needed to be. Mr. Bohrer said Attorney Schlieve's professionalism was very poor and his inability to reach and communicate with her was very frustrating.

¶8 The referee issued his report and recommendation on May 5, 2014. The referee said that in the 2010 decision denying her previous reinstatement petition, this court noted that under SCR 22.36(6), the petitioner has the burden of showing by clear, satisfactory, and convincing evidence that the medical incapacity has been removed and that the petitioner is fit to resume the practice of law, with or without conditions. The referee also noted that the term "fit," as used in SCR 22.36(6), with the phrase "to practice law," encompasses more than removal of a medical incapacity, and that the term "fit" is sufficiently broad to imply a state of preparedness to render competent legal services.

5

¶9 The referee noted that Attorney Schlieve has not practiced law since 1998, and during that time she has not been employed outside the home. She has primarily spent her time caring for her son, who has medical issues. The referee noted that in addition to caring for her son, Attorney Schlieve has been active in her church, in dog rescue efforts, and in other community affairs. In recent times, she has been working with a friend to establish two startup businesses, one offering tea party services and one offering wedding planning services.

¶10 The referee noted that Attorney Schlieve has earned a significant number of continuing legal education (CLE) credits and has attended a significant amount of coursework, all online. The referee noted that Attorney Schlieve provided a printout from the State Bar listing CLE attendance and dues payments from the early 1990s through January 2014. The referee said it was impossible to determine precisely what courses Attorney Schlieve had actually attended, since all were online courses.

¶11 The referee also said:

> Ms. Schlieve is to be commended for the efforts she has taken to update her education on various legal topics. However attending courses on Whistleblowing cases involving the SEC or IRS, or Sarbanes-Oxley, or Mining Loss Symposiums, would seem to have little bearing on her preferred practice areas. More importantly, the record reflects that Ms. Schlieve has not approached her re-education in an organized, consistent and deliberate fashion. She has not planned and prepared for the day when her license to practice may be reinstated. She has taken courses for the sake of taking courses in order to show that she has gone beyond the minimum requirements of the rules.

6

¶12 The referee said that Ms. Albert's testimony about Attorney Schlieve's participation in the WisLAP program raised a number of serious questions. The referee said that after Attorney Schlieve's second positive test for codeine, and after Ms. Albert had informed Attorney Schlieve that WisLAP would continue with monitoring efforts through the reinstatement hearing but not thereafter, Attorney Schlieve contacted her doctor's office and withdrew the medical release in favor of WisLAP. Because of the positive drug screen in February of 2014, WisLAP again requested a list of Attorney Schlieve's current medications and the dates they were first prescribed. When the list was not forthcoming, WisLAP staff followed up with the doctor and was informed that there was no medical authorization from the patient.

¶13 The referee noted that around March 7, 2014, Attorney Schlieve instructed her doctor's office to release the information that she had a prescription for acetaminophen with codeine, although the date when it was first prescribed was not provided. The referee queries, "Was Ms. Schlieve attempting to fabricate an explanation for the positive drug screen showing codeine in her system? At a minimum, it would seem that Ms. Schlieve was less than forthcoming in WisLAP's efforts to understand the reason for the positive drug screen."

¶14 While the referee said he was satisfied that the medical incapacity of alcoholism has been removed, the referee said that, based on her interactions with WisLAP, two positive

7

drug screens showing codeine in her system, and her inability to complete sustained monitoring for a period of at least 12 months, there was no objective verification from WisLAP that Attorney Schlieve does not still suffer from a medical incapacity.  Moreover, the referee concluded that Attorney Schlieve failed to sustain her burden to prove by clear, satisfactory, and convincing evidence that she is currently fit to resume the practice of law within the meaning of SCR 22.36(6).

¶15 Attorney Schlieve argues that she has in fact presented clear, satisfactory, and convincing evidence both that her medical incapacity has been removed and that she is fit to practice law.  At oral argument, she stated that she would be amenable to having her law practice monitored by a licensed attorney.  She said that an attorney indicated he would be willing to monitor her.  Attorney Schlieve stated that if her law license is reinstated, she would like to practice in the areas of adoption and immigration.  She said the attorney she identified as a possible monitor has no experience in either of those practice areas.

¶16 The Office of Lawyer Regulation (OLR) argues that the referee's findings, conclusions, and recommendations should be upheld.  The OLR notes that the referee had an extensive opportunity to make personal observations of Attorney Schlieve and the other witnesses, and that the referee set forth and explained in detail the rationale and basis for his conclusion

8

that Attorney Schlieve's reinstatement petition should be denied.

¶17 When we review a referee's report and recommendation, we will adopt the referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747.

¶18 Following a suspension for medical incapacity, an attorney seeking the reinstatement of his or her license to practice law must show both that the medical incapacity has been removed and that the petitioner is fit to resume the practice of law. As we noted in our order denying Attorney Schlieve's previous reinstatement petition:

> The term "fit," as used in 22.36(6) with the phrase "to practice law," encompasses more than the removal of a medical incapacity or being in a physically, mentally, or morally sound state. The term "fit" is sufficiently broad to imply a state of preparedness to render competent legal services; that is, to be prepared to provide the measure of expertise to ensure the attorney may be safely recommended to the community as a person to be consulted by and to represent others in legal matters.

Schlieve, 323 Wis. 2d 654, ¶24.

¶19 Upon careful review of this matter, we agree with the referee that Attorney Schlieve has failed to demonstrate that she is currently fit to resume the practice of law. Accordingly, we deny her petition for reinstatement.

¶20 Attorney Schlieve has filed an objection to the OLR's statement of costs. Among other things, she argues that costs

9

should not include the fees of counsel for the OLR. This court's general policy, as expressed in SCR 22.24(1m), is to impose all costs, including the expenses of counsel for the OLR, upon the respondent. We find no reason to depart from that general practice here.

¶21 IT IS ORDERED that the petition of Nancy A. Schlieve seeking reinstatement of her license to practice law in Wisconsin is denied.

¶22 IT IS FURTHER ORDERED that within 180 days of the date of this order, Nancy A. Schlieve shall pay to the Office of Lawyer Regulation the costs of this proceeding, totaling $20,367.49. If the costs are not paid within the time specified and absent a showing to this court of her inability to pay the costs within that time, the license of Nancy A. Schlieve to practice law in Wisconsin shall remain suspended until further order of the court.

¶23  SHIRLEY S. ABRAHAMSON, J.  *(dissenting)*.  The court is today reinstating the license of another attorney who suffered from a medical incapacity.  <u>See</u> <u>In Re Disciplinary Proceedings Against Linehan</u>, 2015 WI 82, ___ Wis. 2d ___, ___ N.W.2d ___.  In that case, the court imposed numerous conditions to ensure that the attorney continues to receive appropriate treatment and monitoring to prevent a relapse and to protect his clients and the public.  I would reinstate Attorney Schlieve's license to practice law in Wisconsin subject to strict conditions such as those imposed in <u>Linehan</u>.